UNITED STATES OF AMERICA

IN THE DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Damien Molina-Clark<br>　　　Plaintiff, | File No. |
| v. | Hon.<br>District Court Judge |
| Juan Concepcion, Patrick Herson,<br>　　　Defendants. | |

Brendon Basiga P69369
Attorney for Defendant
2133 University Park Dr., Suite 200
Okemos, MI 48864-5909
517-708-7830

## **COMPLAINT AND JURY DEMAND**

　　　Plaintiff, for his complaint, states:

　　1.　Plaintiff is a competent adult and a resident of Clinton County and the Western District of Michigan.

　　2.　Defendant Juan Concepcion, at all times pertinent to this complaint, was a police officer for Lansing Township, Michigan.

　　3.　Defendant Concepcion's county of residence is unknown and his place of conducting business is Ingham County and the Western District of Michigan.

　　4.　Defendant Patrick Herson, at all times pertinent to this complaint was a police officer for Lansing Township, Michigan.

　　5.　Defendant Herson's county of residence is unknown and his place of conducting business is Ingham County and the Western District of Michigan.

　　6.　This cause of action arose in Lansing Township, Ingham County, Michigan, in the

Western District of Michigan.

7. At all times relevant to this matter, all Defendants were acting under color of law.

8. This Court has jurisdiction pursuant to 28 USC §1331 as the claims are based on 42 USC §1983 and alleged violations of Plaintiff's federal constitutional rights.

9. This court has jurisdiction pursuant to 28 USC § 1367 over the state law claims based on the same facts and circumstances as the federal claims.

## GENERAL ALLEGATIONS

10. Paragraphs 1 through 9 above are incorporated herein by reference.

11. On September 21, 2018 at approximately 11:50 p.m., Plaintiff was at a friend's home at 2510 Wood Street, Lansing, Michigan.

12. A dispute arose between his friend and the friend's girlfriend/roommate resulting in a call to the police.

13. The apartment is in a four story multi-family building and is located on the first floor on the right from the common entry way.

14. When the police arrived, Plaintiff was standing near the apartment door inside the apartment.

15. Plaintiff could hear a police officer talking to the tenant of the apartment, Deontae Wilcox, and they were out in the hallway.

16. The officer asked why Mr. Wilcox would not let the officer into the common area.

17. Plaintiff heard Mr. Wilcox reply that he was scared because the officer had his firearm out.

18. Plaintiff stepped out into the hallway to ask what was going on.

19. Defendant Concepcion pointed his firearm at Plaintiff and Mr. Wilcox and demanded that they open the common door.

20. Plaintiff then backed into the apartment after lifting his shirt to show he had no weapon and showed his hands.

21. Plaintiff said that he did not live there and it was not up to him to allow entry.

22. Mr. Wilcox then entered the apartment, closed the door and locked it.

23. Plaintiff entered the restroom and saw the police lights and flashlights through the windows.

24. Before Defendants entered the apartment, it was occupied by Plaintiff, Mr. Wilcox, Mr. Isiah Caldwell and Ms. Alyssa Bentley.

25. Plaintiff heard the police pushing the intercom buttons on several apartments until someone let them into the common door.

26. The police started banging on the apartment door and saying open the door "we are not going away."

27. Plaintiff and all occupants were unarmed and Plaintiff is unaware of any weapons in the apartment.

28. Mr. Wilcox asked Plaintiff to open the door for the police.

29. After Plaintiff opened the door, at least three officers walked in including Defendants.

30. As the door opened, the police pushed the door open quickly and barged in with no conversation.

31. Plaintiff and Ms. Bentley stepped out into the hallway.

32. Plaintiff was able to observe inside the apartment and watch as Mr. Wilcox and Mr.

Caldwell were taken to the floor by the officers including the Defendants.

33. Both Mr. Wilcox and Mr. Caldwell were handcuffed.

34. The officers told Mr. Wilcox and Mr. Caldwell they were under arrest.

35. Defendant Concepcion was standing in the apartment doorway with his back to Plaintiff.

36. Defendant Concepcion then turned to look at Plaintiff, drew his sidearm and held it near his waist and told Plaintiff to "move away from me."

37. Plaintiff began to comply by moving to his left away from the common door.

38. Defendant Concepcion then told Plaintiff to go the other way toward the common door.

39. Plaintiff began to comply by walking toward the common door.

40. Plaintiff then spoke to Jacquez Evans who had been seated on the stairway to the upper floor apartments by suggesting that if he were going to leave to come with Plaintiff and Ms. Bentley.

41. As Plaintiff was reaching for the door, Defendant Concepcion told Plaintiff to stop because he was under arrest.

42. Plaintiff pulled his hands out of his pockets and left them out visible by his side.

43. Defendant Concepcion ordered Plaintiff to place his hands behind his back and interlock his fingers and Plaintiff complied.

44. Defendant Concepcion came up to Plaintiff and placed a handcuff on Plaintiff's left wrist from behind and said you are about to be a felon.

45. Defendants Concepcion and Herson then grabbed Plaintiff, lifted him so his weight was off of his feet, turned his torso parallel with the floor face down and dropped him to the floor forcefully.

46. Plaintiff was stunned by this assault and was momentarily dazed.

47. When Plaintiff became aware again, Ms. Bentley was crying and screaming.

48. A defendant grabbed Plaintiff's left wrist and forced it behind his back and pushed his hand up toward his head causing pain.

49. Plaintiff then told the Defendants that they had just broken his wrist and that Plaintiff had been attending physical therapy.

50. A police officer held a taser to Plaintiff's forehead and threatened to use it if Plaintiff resisted.

51. Plaintiff was not resisting and at no time resisted the Defendants.

52. After both wrists were in handcuffs, the Defendants picked Plaintiff up and carried him to a police car.

53. Plaintiff told Defendants that he needed an ambulance and needed to go to the hospital.

54. Defendants refused.

55. Defendant Herson transported Plaintiff to the Ingham County Jail.

56. Plaintiff told a jailer that he needed to have his wrist examined and Defendant Herson was standing nearby when this information was relayed.

57. During medical clearance Plaintiff again told the jailer that he needed medical treatment.

58. Plaintiff was not treated at the jail.

59. Plaintiff's forehead was also red and swollen from being forcefully thrown to the floor and he had a headache for several hours after the incident.

60. At some point a few months/weeks after the incident, Plaintiff went to the Lansing Township police station and reported the injury to Lansing Township Police Chief Kay Hoffman.

61. Chief Hoffman told Plaintiff that there was nothing she could do about it.

62. Plaintiff was unable to receive medical treatment until November 2019.

63. On March 7, 2018, Plaintiff had undergone a surgical procedure on his left wrist to repair chronic malunion of the left scaphoid with profound humpback deformity.

64. The March 7, 2018 procedure involved a bone graft, the insertion of supporting wires, and the insertion of a screw for stabilization.

65. The slamming of Plaintiff to the floor and the forcing of his left lower arm up his back by using his hand and wrist as leverage caused significant damage to the previous procedure.

66. On November 21, 2018, Plaintiff underwent another procedure to remove the now malpositioned screw but reduction of the previous fracture and repeating the previous procedure was not possible due to additional fracturing.

67. The procedure resulted in a distal pole scaphoidectomy to reduce pain.

68. Plaintiff continues to have significant and sometimes severe pain in his left wrist with limited mobility and flexibility.

**COUNT 1** – 42 USC § 1983- 4th Amendment-Excessive Force

69. Paragraphs 1 through 68 above are incorporated herein by reference.

70. Defendants both received and completed training to be a certified police officer in the state of Michigan.

71. The Fourth Amendment of the U.S. Constitution protects against the use of excessive force in making an arrest.

72. Plaintiff was fully complying with the verbal orders of all of the officers at time they made physical contact with him.

73. Defendants Concepcion and Herson initially used unnecessary force on Plaintiff by lifting him from his feet, turning his torso parallel to the floor and slamming him to the floor.

74. Defendants again used unnecessary force on Plaintiff by forcing his left hand up his back toward the back of his head causing unnecessary pain and discomfort.

75. Each Defendant was in a position to prevent the excessive force being applied by the other Defendant but failed to act.

76. Neither Defendant was acting in self-defense as Plaintiff was fully complying with verbal orders, was not physically aggressive, was unarmed, and had made no threats of bodily injury or resistance toward the Defendants or any other persons.

77. The amount of force used by Defendants exceeded the force necessary to effectuate the arrest.

78. The conduct of Defendants was a direct and approximate cause of the physical injuries to Plaintiff described above.

79. Plaintiff was suffered emotional harm in the form of extreme anxiety, nervousness, and worry when he sees or is near a police officer.

80. The conduct of Defendants was a direct and approximate cause of the violations of the Plaintiffs Fourth Amendment rights to be free from excessive force.

81. The amount of force used by Defendants was unreasonable under the circumstances and a violation of Plaintiffs constitutional rights under the Fourth Amendment.

82. As of September 21, 2018, it was clearly established that the Fourth Amendment to the United States Constitution allows a police officer to use only that force that is reasonably necessary to effectuate an arrest in the course of an arrest.

83. As of September 21, 2018, it was clearly established that using more force than what is reasonably necessary to effectuate an arrest is a violation of the Fourth Amendment of the United States Constitution.

84. No reasonably trained or experienced police officer would have believed it necessary to slam a compliant arrestee to the floor while holding the arrestee's arms of to bend an arrestees arm up toward the back of his head when he is not resisting thereby causing physical injury.

Wherefore Plaintiff requests that this honorable court enter judgment in honor of the Plaintiff against Defendants in an amount of not less than $25,000.00 each.

### COUNT 2 – ASSAULT AND BATTERY
(state law)

85. Paragraphs 1 through 53 above are incorporated herein by reference.

86. Defendants committed a battery against Plaintiff by slamming him to the floor and forcing his left hand and wrist up his back toward the back of his head.

87. Defendants conduct was a deliberate and intentional action against Plaintiff on September 21, 2018.

88. Defendants conduct was offensive and caused Plaintiff pain, embarrassment, humiliation, anxiety and mental distress.

89. Defendants intended to touch Plaintiff.

90. Defendants were not acting in self-defense.

91. Defendants' touching of Plaintiff was beyond that touching authorized by their duties as police officers.

92. Plaintiff was injured to the extent that Defendants' conduct caused him significant physical pain and discomfort, continuing pain and limitations of the use of his left wrist, and

mental distress.

WHEREFORE, Plaintiff requests that this Court enter judgment in favor of Plaintiff and against Defendants in an amount not less than $25,000.00 each.

**COUNT 3** - 42 USC § 1983- 4th Amendment-Failure to Prevent Excessive Force

93. Paragraphs 1 through 92 above are incorporated herein by reference.

94. Each Defendant was in a position to see and prevent the conduct of the other Defendant when he applied excessive force to Plaintiff.

95. As a sworn police officer, each Defendant had a duty to prevent a constitutional violation by other police officers and had the opportunity to prevent that conduct in this case.

96. The failure to prevent the other Defendant from using excessive force on Plaintiff was a violation of Plaintiffs right to be free from excessive force under the Fourth Amendment in the United States Constitution.

97. Each Defendant's failure to prevent the use of excessive force by the other Defendant is a violation of Plaintiffs rights to be free from excessive force under the Fourth Amendment in the United States Constitution.

98. Each Defendant's failure to prevent the other Defendant Loomis' use of excessive force and/or entry into the apartment was a direct and approximate cause on the injuries to Plaintiff as described above.

99. As of September 21, 2018, it was clearly established that failing to prevent another police officer from committing a constitutional violation if there is an opportunity to prevent it is a violation of the Fourth Amendment of the United States Constitution.

100. No reasonably trained and experienced police officer would have believed it

lawful to fail to prevent the use of excessive force by the other Defendant under these circumstances.

Wherefore Plaintiff requests that this honorable court enter judgment in favor of the Plaintiff against Defendants in an amount of not less than $25,000.00 each.

### **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests this Honorable Court:

1. Enter judgment against each Defendant as specified in the above counts in an amount as awarded by the jury but in no case less than the relief specified in each count;

2. Award Plaintiff his costs and attorney fees as authorized by 42 U.S.C §1988;

3. Award Plaintiff his interest on the judgment to the date of the complaint as authorized by law;

4. Because each individual Defendant's conduct was willful, malicious and intended to inflict monetary loss, humiliation, embarrassment and mental anxiety to Plaintiff, award exemplary damages to Plaintiff in an amount of not less than $100,000.00; and

4. Award Plaintiff any other relief as equity and justice demand.

Verification and signature by Plaintiff:

I declare that the statements above are true to the best of my information, knowledge, and belief.

9/15/2021
Date

_____
Damien Molina-Clark

Signature by Attorney:

9/15/2021
Date

_____
Brendon Basiga P69369
Attorney for Plaintiff
2133 University Park Dr., Suite 200
Okemos, MI 48864-5909
517-708-7830

## JURY DEMAND

Plaintiff hereby demands trial by jury on all counts.

9/15/2021
Date

_____
Brendon Basiga P69369
Attorney for Plaintiff
2133 University Park Dr., Suite 200
Okemos, MI 48864-5909
517-708-7830